IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 27, 2019

## STATE OF TENNESSEE v. MARKEITH CHAPALE PULLIAM

**Appeal from the Criminal Court for Hamilton County**
**Nos. 293482, 292849, 301140      Barry A. Steelman, Judge**

_____

### No. E2018-00434-CCA-R3-CD

_____

The Defendant, Markeith Chapale Pulliam, appeals the trial court's revocation of his community corrections sentence, arguing that the court abused its discretion both in revoking his community corrections and ordering him to serve the balance of his sentence in the Department of Correction. After thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Christopher H. Jones, Chattanooga, Tennessee, for the appellant, Markeith Chapale Pulliam.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Neal Pinkston, District Attorney General; and Jason Demastus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On September 24, 2014, a Hamilton County grand jury indicted the Defendant for aggravated burglary and theft of property, and on November 19, 2014, he was also indicted for two violations of the Motor Vehicle Offender Act, namely the light law and financial responsibility law. On March 25, 2015, the Defendant pled guilty to theft of property and the two motor vehicle violations and was given an effective eight-year

sentence to be served on supervised probation after service of eleven months and twenty-nine days incarcerated. The Defendant was released on probation on February 10, 2016.

On June 28, 2016, a probation violation report was filed, stating that the Defendant had been arrested and charged on June 10, 2016, with felonious operation of a motor vehicle, driving on a revoked or suspended license, seat belt law violation, unlawful removal of a decal or license plate, financial responsibility, and driving an unregistered vehicle. The report also noted that the Defendant had changed his residence without notifying his probation officer and failed to attend a scheduled meeting with his probation officer. A capias for the Defendant's arrest for violation of probation was executed on November 23, 2016.

On March 1, 2017, a Hamilton County grand jury indicted the Defendant for seven offenses he had committed on June 10, 2016: driving a motor vehicle on a public road after being declared a habitual motor vehicle offender; driving on a revoked or suspended license; driving without a seat belt; unlawful removal of a license plate; failure to comply with financial responsibility law; driving a motor vehicle without proper registration and license plate, and failure to appear. On June 26, 2017, the Defendant conceded that he had violated his probation and agreed to plead guilty to driving a motor vehicle on a public road after being declared a habitual vehicle offender. In exchange, the other six counts were dismissed, and the Defendant's probation was partially revoked, such that he served 11 months and 29 days incarcerated with the remainder to be served on community corrections and house arrest. Two years on community corrections were added to his original sentence based on his motor vehicle guilty plea.

On December 19, 2017, a probation violation report addendum was filed, stating that the Defendant had failed to abide by his probation officer's instructions on six different days in December 2017, failed drug tests on December 6, 2017, and failed to abide by the rules of his house arrest on four different days in December 2017. Another capias for the Defendant's arrest for violation of probation was executed on December 29, 2017.

The trial court held a probation revocation hearing on February 12, 2018. Mr. William Ford testified that he had been the Defendant's probation officer since November 2017. Mr. Ford verified that the Defendant's various sentences totaled an approximately ten-year effective sentence. He testified that upon the Defendant's release from custody, Mr. Ford told him the rules of the community corrections program, specifically regarding substance use and electronic monitoring. The Defendant admitted to using marijuana the day before his release from custody, though Mr. Ford did not immediately violate him for that offense. Mr. Ford affirmed that the Defendant had failed two drug tests on December 6, 2017, due to his marijuana use. The Defendant also

lied to Mr. Ford about his work hours with two different employers and his whereabouts on multiple days in December.

The Defendant testified on his own behalf at the probation revocation hearing. He stated that if he were again granted probation, he had two potential job offers waiting for him. The Defendant told the trial judge that "a lot of people told [him] that [the trial judge] was fair[,]" and he needed to be granted community corrections again to "get home to [his] family and try to work." He also claimed that Mr. Ford had cursed at him and that he was working "off the books" at one of his jobs, which was why Mr. Ford could not verify his work hours or whereabouts. The Defendant further asserted that he needed his community corrections reinstated because he had "stopped race wars" while incarcerated; his mother's "light bill was high[,]" and he needed to "winterize [her] house"; and he "just did a whole year" and didn't "need to be locked up" because of "an emergency custody hearing for [one of his] daughter[s]."

On cross-examination, the Defendant affirmed that he had "done a pretty good bit of" probation in his lifetime, had violated some of his probationary sentences, and had to serve them incarcerated. He stated that he had done community corrections before and knew what the rules were before starting his instant community corrections sentence, and he conceded that he had violated those rules. When the trial court questioned the Defendant about his marijuana use, both in and out of custody, he stated that he used marijuana because he "had bad anxieties and seizures[.]"

Ms. Jamie Griffin, the Defendant's fiancée, testified on his behalf at the probation revocation hearing. She stated that she had never seen the Defendant smoke marijuana and that his four daughters "were happy to be with their dad" when he was released onto community corrections. She affirmed the Defendant's assertions that he was trying to get custody of one of his daughters and that he had a job opportunity waiting for him upon his release.

Following the close of all proof, the trial court revoked the Defendant's community corrections sentence in full and ordered him to serve the balance of his ten-year sentence in the Department of Correction.

## ANALYSIS

The Defendant's sole argument on appeal is that the trial court abused its discretion in revoking his alternative sentence "for allegedly using marijuana, since marijuana use is not a crime of moral turpitude, not a crime of society, and is known to alleviate seizures that can cause [the] death of Mr. Pulliam which is substial [sic] evidence not to be ignored by the Trial Court." The Defendant also notes in his appellate

brief that the trial court "did not consider that marijuana will likely be legalized in Tennessee in upcoming years as evidenced by Tennessee Senate Bill 1710." The Defendant further attached copies of a Food and Drug Administration article regarding a drug for treating epilepsy that is "comprised of an active ingredient derived from marijuana" and of Tennessee Senate Bill 1710 to his appellate brief. The State responds that the trial court did not err in revoking the Defendant's community corrections after finding that he had violated its terms and further notes that he provided no evidence of a medical condition or that he uses marijuana for medicinal purposes. Regardless, the State asserts that the Defendant admittedly knew marijuana was against the rules of his community corrections sentence and therefore violated its terms. We agree with the State.

We note that "[g]iven the similar nature of a community corrections sentence and a sentence of probation, . . . the same principles are applicable in deciding whether a community corrections sentence revocation was proper." State v. Harkins, 811 S.W.2d 79, 83 (Tenn. 1991). Therefore, any references to probation in the following sections apply equally to community corrections. A trial court is granted broad authority to revoke a suspended sentence and to reinstate the original sentence if it finds by a preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311. The revocation of probation lies within the sound discretion of the trial court. Harkins, 811 S.W.2d at 82; State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). We review this issue, therefore, for an abuse of discretion.

Upon a finding that a violation has occurred, the trial court may, in its discretion, either: (1) order incarceration; (2) cause execution of the judgment as it was originally entered; or (3) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 644 (Tenn. 1999); see also Tenn. Code Ann. §§ 40-35-310, -311(e), -308(c) (2014). "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), perm. app. denied (Tenn. June 28, 1999); see also State v. Markquitton Sanders, No. M2010

02212-CCA-R3-CD, 2011 WL 4529655, at *2 (Tenn. Crim. App. Sept. 29, 2011), perm. app. denied (Tenn. Nov. 17, 2011).

The trial court noted that the Defendant used marijuana both in and out of confinement and "six times over Thanksgiving." The trial court also examined his lying about his whereabouts and work schedule to his probation officer and his failure to attend his mandatory community corrections classes "on time, or at all." The trial court also noted that the Defendant had previously been granted probation and violated its terms "within a short period of time[.]"

The Defendant seems to argue that his marijuana use was the sole reason that the trial court found he had violated his community corrections sentence, ignoring the trial court's other stated violations. The Defendant argues that because marijuana use is not "a crime of moral turpitude," the trial court abused its discretion in finding he had violated his probation and further abused its discretion by not releasing him on "time served and plac[ing him] back on probation." Regardless of the fact that the Defendant did not present any medical proof of his need for medicinal marijuana use, he admittedly knew that any substance use violated the terms of his community corrections sentence. He also knew that lying to his probation officers and missing or being late to mandatory meetings were against the terms of his community corrections sentence.

Though referenced in the Defendant's brief on appeal, the Defendant fails to actually acknowledge that upon finding that a probation violation had occurred, the trial court had discretion to order him to serve the rest of his sentences incarcerated. See Hunter, 1 S.W.3d at 644. He further fails to recognize that he is not automatically entitled to receive alternative sentencing or another grant of probation following his violation of probation. See Jeffrey A. Warfield, 1999 WL 61065, at *2. The trial court noted that the Defendant wanted to "indicate that he can do well on some alternative form of sentence, when the fact of the matter is, when he's behind bars, he's still violating the law . . . he's already a Range II [offender,] and he's violated supervised probation and now he's violated community corrections[.]"

Despite the Defendant's arguments to the contrary, the trial court has only abused its discretion if the record on appeal contains no substantial evidence that a probation violation has occurred. Both the Defendant and Mr. Ford testified to the Defendant's probation violations, including his marijuana use, dishonesty, and failure to attend mandatory meetings on time or at all. Further, according to the testimony at the revocation hearing, Mr. Ford tried to give the Defendant multiple chances by not filing probation violation reports until it became absolutely necessary to do so. Though the Defendant seems to argue that because marijuana may someday be legalized, it should not currently be considered a probation violation, we reiterate that the Defendant

presented no evidence of medicinal use and knew that substance use violated the rules of his community corrections sentence. Regardless, the Defendant also violated his sentence by lying to his probation officer and failing to attend mandatory meetings. As such, the trial court clearly acted within its discretion in revoking the Defendant's community corrections sentence after finding that he had violated its terms and ordering him to serve the balance of his sentences incarcerated. The Defendant was not entitled to alternative sentencing or another grant of probation. This issue is without merit.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the Defendant's community corrections sentence and ordering the balance of his sentence to be served in the Tennessee Department of Correction.

_____
ALAN E. GLENN, JUDGE